# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

RICHARDS, et al.,

           Plaintiff,

  v.

TRENDWEST, et al.,

           Defendant.

**Case No.** C02-5648JKA

**ORDER ON DEFENDANT FREYBERGER'S' MOTIONS IN LIMINE**

    THIS MATTER comes before the court on the Defendant Tom Freyberger's Motions in Limine. The court has reviewed all materials submitted in support of and in response to said motion as well as the files and records herein.

    The case arises out of plaintiffs' claims for race discrimination and discharge, violations of 42 U.S.C. 1981, RCW 49.60, assault and battery, negligence, gross negligence, and outrage. Defendant Freyberger's motions in limine are (1) to exclude the testimony of proposed expert witness Albert Black, Ph.D; (2) to exclude the testimony of proposed expert witness Kimberly Barrett, Ph.D; and (3) to exclude any testimony at trial regarding the financial condition or status of defendants or any unnamed parties to this action pursuant to Fed. R. Evid. 401, 402, and 403.

At the request of plaintiffs' counsel, it appears that both Dr. Barrett and Dr. Black have interviewed the plaintiffs individually. Plaintiffs argue as follows:

> "if Plaintiff's experts were not allowed to explain what the African-American workers faced everyday in the plant by Defendants (e.g. racial threats, daily racial epithets, racial graffiti, among many others) and how they have been denied an equal opportunity and harmed, the trier of fact would not get the whole story.  This would constitute a manifest injustice" (Plaintiffs' Response to Motions in Limine p.6).

This suggests that plaintiffs anticipate having the experts testify to the facts on behalf of the plaintiffs. As with all expert testimony, the party offering it must establish the appropriate foundation from fact witnesses.   That, however, does not address the question as to whether Dr. Black and Dr. Barrett should be allowed to testify as to the alleged impact of the conduct described by the plaintiffs should a proper foundation be established.

Plaintiffs' counsel has submitted a Curriculum Vita for Kimberly Barrett, and a Declaration from Albert Black in support of their respective designations as proposed expert witnesses. The following are abbreviated synopses relevant to the inquiry before the court.

**1. Kimberly Barrett**

Dr. Barrett submits a curriculum vita and declaration in support of her role as an expert witness in this case.

Dr. Barrett is currently a Senior Lecturer with the University of Washington Department of Psychology in both undergraduate and graduate courses.  She teaches Cross-Cultural Psychology, Race Relations and Minority Groups, Minority Mental Health, Child Psychotherapy, and Developmental Psychopathology.  She acts as a Clinical supervisor, and serves as Director of the Cross-Cultural Psychology Resource Program.  Additionally, she maintains a private practice in Seattle working with immigrant, refugee, and minority families in the areas of child, adolescent, and family therapy.

Dr. Barrett has an undergraduate degree in Psychology, a Master's degree in Counseling Psychology, an Ed.D in Counseling and Educational Psychology, and a Postdoctoral Fellowship in Addictive Behaviors.  She has worked in related fields since 1978.  Her publications are numerous and

varied, the most recent being with regard to the interrelationship between and among race, culture, psychology and law.

Defendant asserts that Dr. Barrett's conclusions are "nothing more that her personal opinions on racisim and society and Trendwest"; that she points to no methodology (other than her interviews); and that she offers no studies, polls or other objective scientific testing methods to support her "purported 'expert' opinion."

The Ninth Circuit has addressed this issue in *Mukhtar v. California State University*, 299 F.3d 1053 (9th Cir. 2002). Professor Mukhtar sued the defendant under Title VII alleging race discrimination in denying him tenure. The trial court admitted expert testimony from Dr. David Wellman, who had devoted much of his career to investigating how racism persists without open bigotry, and that race was a factor in the defendant's decision to deny Elsayed tenure. Dr. Wellman had developed eight criteria for "decoding" white behavior which he found present in the decision to deny the plaintiff tenure. In review the appellate court relied on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc*. 509 U.S. 579 (1993) under which the trial court is assigned the "gatekeeping" task to determine the relevancy and reliability of the proffered testimony toward the end that "junk science" be avoided. While acknowledging that the trial court has broad latitude in determining the admissibility of expert testimony, the appellate court emphasized that the exercise of that discretion must include an analysis of its reliability. The *Mukhtar* court found that the trial judge directed his concern to whether the expert would testify on an "ultimate issue" reserved for the jury to decide, and failed to discuss the issue of reliability (relevancy was conceded). In arriving at a determination on relevancy and reliability it is not always necessary that a separate hearing be held to meet the "gatekeeping" requirement of *Daubert*, but it is necessary that the court inquire and make a determination regarding these issues.

The allegations of discrimination in this case are anything but subtle. Assuming the truth of plaintiffs' assertions they are hostile, radical and vivid. They fall into the category of "overt racism" such as described by Dr. Barrett on page 2 of her declaration. As such, it can be argued that if believed, the

plaintiffs' assertions need no "expert" opinion to assist the jury in determining the nature of the impact the alleged conduct had on the plaintiffs. On the other hand Dr. Barrett offers authority from the American Psychological Association, the U.S. Military and numerous other studies to support the notion that the average juror would not be aware of (1) the perception gap between whites and blacks regarding race discrimination; (2) the degrees of conscious awareness regarding one's own racially prejudice views; (3) cognitive and emotional stereotyping; and (4) the persistence of race problems in today's society. Certainly this meets the threshold of <u>relevancy</u>. Dr. Barrett posts an impressive educational background, professional work history, publications, and awareness of studies regarding racial and cultural issues emanating from her own studies as well as the many reports and studies done by others (see pp 5-18, Declaration of Kim Barrett Ed.D in Opposition to Defendants' Motion in Limine to Exclude ExpertTestimony.) Accordingly, the court concludes that plaintiff has met the <u>reliability</u> threshold.

> ***Based on the foregoing, the court denies defendants' motion in limine with regard to plaintiffs' proposed expert, Kimberly Barrett, without prejudice to defendants' right to challenge the testimony for lack of a proper foundation.***

## 2. Albert Black

Dr. Black offers a declaration setting forth his personal, educational, and employment history. He further enumerates papers presented at professional meetings, professional organization offices held, publications, unpublished writings, courses taught, lectures given, and awards received.

Dr. Black is currently with the University of Washington Department of Psychology. He has an undergraduate degree in Zoology, a Master's degree in Sociology, and a Ph.D in Sociology. Relevant to this case he has taught the following courses: The Sociology of African Americans; Introductory Sociology; Social Problems; Race Relations; Social Change; and African American Political Thought. He has facilitated and participated in numerous community presentations on issues related to race and ethnicity.

Defendant asserts that Dr. Black should not be allowed to testify because his "opinion" consists entirely of testimony from the named plaintiffs about their experiences at Trendwest**,** a review of the medical records, doctor reports, and photographs. Defendant argues that Dr. Black does not point to any

Page - 4

studies, polls or other objective scientific testing methods to support his "purported 'expert' opinion."

While he appears to be much in demand as a speaker and teacher, the court finds that insofar as the case at bar is concerned he offers less in the way of establishing reliable principles and methods as required by ER 702 than does Dr. Barrett. The court also observes that the testimony of both witnesses would appear redundant.

***Based on the foregoing the court grants defendants' motion in limine with regard to plaintiffs' proposed expert, Albert Black.***

**3. Financial Status/Condition of Defendants/Unnamed Parties**.

Defendant asks the court to enter an order excluding evidence regarding the defendants' financial condition or status at trial, as well as the financial condition or status of any unnamed parties. Defendant argues that the evidence would be irrelevant and prejudicial. **The court's inclination is to bifurcate the trial in one of the following alternative ways:**

**(1) phase one - liability; phase two - all damages**

**(2) phase one - liability and compensatory damages; phase two - punitive damages**

Either way, defendants' arguments regarding irrelevance and prejudice would not preclude pretrial examination into the areas of financial condition or status nor would such information be "prejudicial" because none of it would be eligible for presentation to the jury unless or until such time as they had determined liability.

***Defendants' motion in limine regarding the financial status or condition of defendants or unnamed parties is granted except as to the second phase of a bifurcated trial addressing the issue of punitive damages***.

Dated this 12th day of August 2005

   /s/ J. Kelley Arnold
U.S. Magistrate Judge, J. Kelley Arnold

ORDER
Page - 5

Case 3:02-cv-05648-JKA Document 159 Filed 08/12/05 Page 6 of 6

ORDER
Page - 6